UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>MARRIOTT VACATIONS WORLDWIDE CORPORATION; and<br>MARRIOTT OWNERSHIP RESORTS, INC.<br><br>Defendants. | Case No. 6:25-cv-00790<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**INJUNCTIVE RELIEF SOUGHT** |

## NATURE OF ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of religion and to provide appropriate relief to Fadra James-Miles ("Ms. Miles" or "Charging Party"). As alleged with greater particularity below, Plaintiff, the Equal Opportunity Employment Commission (the "EEOC" or "Commission"), alleges Defendants Marriott Vacations Worldwide Corporation ("Marriot Vacations") and Marriott Ownership Resorts, Inc. ("Marriott Ownership") (collectively, "Defendants") violated Title VII when they discriminated against Ms. Miles by refusing to accommodate her sincerely held religious beliefs, retaliating against her, and constructively discharging her.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.

2. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§§ 2000e-5(f)(1) and (3) ("Title VII"), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. Venue is proper because the employment practices alleged to be unlawful were committed in Orlando, Florida, which is within the jurisdiction of the United States District Court for the Middle District of Florida, Orlando Division.

## PARTIES

4. Plaintiff, the EEOC, is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1)and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5. Marriott Vacations is a Florida corporation, is registered to do business in Florida, has continuously done business in Florida, and at all relevant times, employed at least 15 employees.

6. At all relevant times, Marriott Vacations has continuously been an employer engaged in an industry affecting commerce under Sections 42 U.S.C. 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

7. Marriott Ownership is a Florida corporation, is registered to do business in Florida, has continuously done business in Florida, and at all relevant times, employed at least 15 employees.

8. At all relevant times, Marriott Ownership has continuously been an employer engaged in an industry affecting commerce under Sections 42 U.S.C. 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

## CONDITIONS PRECEDENT

9. More than thirty days prior to the institution of this lawsuit, Charging Party filed a Charge of Discrimination (the "Charge") with the Florida Commission on Human Relations ("FCHR").

10. Pursuant to the Worksharing Agreement between FCHR and the EEOC, the Charge was duly-filed with the EEOC on or around July 18, 2023.

11. On or around July 11, 2024, the Charge was transferred to the EEOC for processing.

12. Prior to the institution of this lawsuit, the EEOC issued a Letter of Determination to Marriott Vacations indicating that it found reasonable cause to believe that Marriott Vacations discriminated against Ms. Miles in violation of Title VII by denying her a religious accommodation, retaliating against Ms. Miles, and by constructively discharging Ms. Miles.

13. In the Letter of Determination to Marriott Vacations, the EEOC invited Marriott Vacations to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate

relief.

14. Marriot Ownership had notice of the Charge of Discrimination and participated in the administrative investigation.

15. Prior to the institution of this lawsuit, the EEOC engaged in communications with both Defendants to provide Defendants the opportunity to remedy the unlawful employment practices.

16. Marriot Ownership participated in the pre-suit conciliation process.

17. The EEOC was unable to secure from Defendants a conciliation agreement acceptable to the EEOC.

18. On September 16, 2024, the EEOC issued a Notice of Conciliation Failure to Marriott Vacations.

19. Marriot Ownership had notice of the Notice of Conciliation Failure.

20. All conditions precedent to the institution of this lawsuit have been fulfilled.

### STATEMENT OF FACTS

#### Defendants' Sales Model

21. Marriott Vacations business is to provide vacation ownership programs worldwide.

22. Marriott Ownership operates aspects of Marriott Vacations' vacation ownership program business, including, but not limited to, providing Human Resources support to Marriot Vacations.

23. Marriott Vacations created, controlled, and distributed employee policies and handbooks that governed Ms. Miles' employment.

24. Defendants sell vacation timeshare programs worldwide, offering timeshare ownership at various hotels and vacation clubs they own.

25. Defendants sell timeshares through sales executives who work on site at the properties.

26. There are two primary roles for sales executives.

27. One role, the "First Time Buyer Line," involves selling timeshare ownership to prospective buyers that have never owned a timeshare with Defendants.

28. The second role is the "Owner Line," which is selling additional timeshares to existing owners.

29. Sales executives in both roles sell timeshares by scheduling presentations and property tours with visiting guests.

30. During the tours, sales executives discuss the benefit of timeshare ownership and try to sell timeshares to the customers.

31. Sales executives are paid a base salary and commission based on the number of timeshares they sell.

32. Base salary is usually minimum wage, and sales executives make most of their earnings through commissions.

33. Defendants have a practice of placing sales executives on "overage" to reprimand employees.

34. Opportunity to earn commission is lower for sales executives placed on overage because they give tours to non-qualified potential buyers, such as those who do not have financial pre-approval.

35. If a sales executive is assigned overage, there is a likelihood he or she will not give any customers a tour for their entire shift, thus having no potential for sales.

36. Working "overage" has a negative impact on sales executives' commissions.

37. Being placed on overage also greatly impacts a sales executive's ability to meet their sales targets that are set by Defendants.

38. Defendants will place sales executives on "overage" to discipline them if they have repeated tardiness or miss a mandatory meeting.

Ms. Miles' Employment with Defendants

39. Ms. Miles is a practicing Seventh Day Adventist.

40. Ms. Miles holds a sincerely-held religious belief that Sabbath must be observed from Friday evenings at sundown to Saturday evenings at sunset.

41. Ms. Miles' sincerely-held religious belief restricts her from working on Saturdays because Saturdays must be used as a day of rest and worship.

42. Because her religion is central to her life, Ms. Miles discloses her religion to potential employers and informs potential employers that she cannot work Saturdays during interviews.

43. Defendants hired Ms. Miles on or around May 24, 2021.

44. Defendants hired Ms. Miles as a sales executive in the First Time Buyer Line at the Sheraton Vistana Resort in Orlando, Florida.

45. During the hiring process, Ms. Miles informed the hiring managers that she could not work on Saturdays due to her religion and that she would only accept the position if she was given Saturdays off.

46. Upon hire, Defendants granted Ms. Miles her requested religious accommodation of having Saturdays off.

47. At her time of hire, Ms. Miles' managers were not able to give her two consecutive days off, but she eventually received back-to-back days off.

48. Ms. Miles succeeded in her sales executive role on the First Time Buyer Line.

49. Subsequently, Ms. Miles asked for a transfer to a sales executive position on the Owner Line because sales executives on the Owner Line made more sales and received higher commissions.

50. On or about August 6, 2022, Defendants granted Ms. Miles' transfer to the Owner Line.

51. At the time Ms. Miles' transfer to the owner line was approved, she had the same managers who had originally hired her and approved her religious accommodation for Saturdays off.

52. Around February 2023, Ms. Miles' managers changed to Nick Autillo (Regional Director) and Steven Spratt (Manager).

53. On or around late April 2023 or early May 2023, Ms. Miles' former manager informed her that her new managers, Mr. Autillo and Mr. Spratt, asked him about her religious accommodation of not working Saturdays.

54. Upon information and belief, in April 2023, Ms. Miles surpassed her Month-to-Date sales goals.

55. Despite surpassing sales goals, on or around April 2023 or early May 2023, Mr. Spratt placed Ms. Miles on overage for the month of May 2023.

56. After Mr. Spratt placed Ms. Miles on overage, on or around May 12, 2023, Mr. Spratt told Ms. Miles that he would start scheduling her to work on Saturdays. In other words, Ms. Miles would work overage on Saturdays.

57. Ms. Miles explained to Mr. Spratt that she was a Seventh Day Adventist and cannot work Saturdays because it would violate her religion.

58. During the conversation, Ms. Miles was visibly crying and shaken.

59. Mr. Spratt responded by stating, *inter alia*, that she had to come in on scheduled Saturdays or "actions would be taken."

60. That same day, Ms. Miles submitted a complaint to Defendants' HR department using an online portal, EthicsPoint, in which she reported that Mr. Spratt discriminated against her based on her religion.

61. In addition, on or around May 18, 2023, Ms. Miles sent a letter to Human Resources to report that her accommodation had been revoked and that she had been discriminated against.

62. Around this time, Ms. Miles also called Defendants' HR hotline.

8

63. Throughout May 2023, Ms. Miles was scheduled to work on Saturdays.

64. Ms. Miles did not report to work on the Saturdays she was scheduled because it violated her sincerely held religious beliefs.

65. Being on overage in May 2023 put Ms. Miles at a disadvantage and restricted her ability to earn commissions and hit her sales targets.

66. Being scheduled to work on Saturdays in May 2023, a day she could not work, had an additional negative impact on Ms. Miles because she could then only work (even if on overage) 4 days a week, further reducing her sales and commissions.

67. On or around May 25, 2023, Ms. Miles received a call from Elizabeth Vargas from Defendants' HR Department in response to her complaint and scheduled a call for May 30, 2023.

68. Upon information and belief, on the May 30, 2023 call, Ms. Vargas informed Ms. Miles that she must work the Saturdays that she is scheduled for.

69. After speaking to Ms. Vargas, Ms. Miles spoke to Regional Director Nick Autillo about her religious accommodation, but he told her that she needed to follow the assigned schedule and work Saturdays.

70. Ms. Miles continued to be scheduled to work Saturdays after her conversations with Ms. Vargas and Mr. Autillo.

71. Ms. Miles—after complaining to Mr. Spratt, human resources and Mr. Autillo about taking away her religious accommodation—still had to choose between practicing her religion or working scheduled Saturdays "overage" days.

72. As a result, Defendants forced Ms. Miles to resign and constructively discharged her on or around June 1, 2023.

73. At the time of her resignation, Ms. Miles' was scheduled to work on Saturdays and had to choose between practicing her religion or working scheduled Saturdays "overage" days.

## STATEMENT OF CLAIMS

### Count I – Failure to Provide Religious Accommodation

74. Paragraphs 1 through 73 are incorporated by reference as if fully set forth herein.

75. From at least May 2023, Defendants engaged in unlawful employment practices in violation of Sections 701(j) and 703(a)(1) of Title VII, 42 U.S.C. §§ 2000e(j) and -2000e-2(a)(1), by failing or refusing to provide Ms. Miles with a reasonable accommodation of her sincerely held religious beliefs.

76. Ms. Miles possesses a religious belief that from Friday evenings at sundown to Saturday evenings at sunset she cannot work and is only permitted to rest and worship God.

77. Defendants' failure to accommodate Ms. Miles' sincerely held religious belief resulted in adverse action(s) against Ms. Miles.

78. The practices complained of above are unlawful and in violation of Title VII.

79. The practices complained of have deprived Ms. Miles of equal employment opportunities and otherwise adversely affected her status as an employee because of her religion.

80. The practices complained of were intentional.

81. The practices complained of above were conducted with malice and with reckless indifference to the federally protected rights of Ms. Miles.

## Count II – Retaliation

82. Paragraphs 1 through 73 are incorporated by reference as if fully set forth herein.

83. Ms. Miles engaged in a statutorily protected activity when she objected to Defendants' revocation of her religious accommodation.

84. Defendants discriminated against Ms. Miles in violation of 42 U.S.C. § 2000e-3 by retaliating against Ms. Miles.

85. Defendants' retaliation against Ms. Miles, included, but is not limited to, scheduling Ms. Miles for overage and to work on Saturdays, reducing her days worked and pay, violating her religious observance, and constructively discharging Ms. Miles.

86. The practices complained of above are unlawful and in violation of Title VII.

87. The practices complained of have deprived Ms. Miles of equal employment opportunities and otherwise adversely affected her status as an employee because of her religion.

88. The practices complained of were intentional.

89. The practices complained of above were conducted with malice and with reckless indifference to the federally protected rights of Ms. Miles.

90. Defendants discriminated against Ms. Miles in violation of 42 U.S.C. § 2000e-3 by retaliating against Ms. Miles.

### Count III – Constructive Discharge

91. Paragraphs 1 through 73 are incorporated by reference as if fully set forth herein.

92. Defendants engaged in unlawful employment practices in violation of Sections 701(j) and 703(a)(1) of Title VII, 42 U.S.C. §§ 2000e(j) and -2000e-2(a)(1), by constructively discharging Ms. Miles.

93. The effect of the practices complained of in Paragraphs 52-73 has been to affect the terms and conditions of employment for Ms. Miles, to deprive her of equal employment opportunities and to otherwise adversely affect her status as an employee because of her religion.

94. The practices complained of in Paragraphs 52-73 resulted in Ms. Miles constructive discharge.

95. The practices complained of above are unlawful and in violation of Title VII.

96. The practices complained of were intentional.

97. The practices complained of above were conducted with malice and with reckless indifference to the federally protected rights of Ms. Miles.

98. Defendants discriminated against Ms. Miles in violation of 42 U.S.C. §§ 2000e(j) and -2000e-2(a)(1), by constructively discharging Ms. Miles..

## PRAYER FOR RELIEF

WHEREFORE, the EEOC respectfully requests that this Court:

99. Grant a permanent injunction enjoining Defendants, their officers, parent(s), successors, assigns, agents, managers, employees and all persons in active concert or participation with them, from engaging in employment practices that discriminate against employees because of their religion;

100. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for employees with sincerely-held religious beliefs;

101. Order Defendants to make Ms. Miles whole by providing compensation for past, present, and future pecuniary losses, including but not limited to job search expenses, resulting from the unlawful employment practices complained of herein, in amounts to be determined at trial, and other affirmative relief as necessary to eradicate the effects of Defendants' unlawful employment practices;

102. Order Defendants to make Ms. Miles whole by providing compensation for past, present, and future non-pecuniary losses resulting from the unlawful employment practices described above, including, emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

103. Order Defendants to make Ms. Miles whole by providing appropriate back pay with pre-judgment interest and lost benefits, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices, including but not limited to reinstatement and/or front pay;

104. Order Defendants to pay Ms. Miles punitive damages for engaging in intentional discrimination with malice or with reckless indifference, in amounts to be determined at trial;

105. Grant such other further relief as the Court deems necessary and proper in the public interest; and

106. Award the EEOC its costs in this action.

## **JURY TRIAL DEMANDED**

The EEOC requests a jury trial on all questions of fact raised by this Complaint.

Dated: May 5, 2025

Respectfully submitted,

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Andrew B. Rogers
Acting General Counsel
Christopher Lage
Deputy General Counsel
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, DC 20507


Kristen M. Foslid
Regional Attorney
Florida Bar No. 0688681

s/ Lucas B. Michelen
BEATRIZ BISCARDI ANDRÉ
Supervisory Trial Attorney
New York Bar No. 4394599
LUCAS B. MICHELEN
Trial Attorney
New York Bar No. 5606868
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Tampa Field Office
501 E. Polk Street, 10th Floor
Tampa, Florida 33602
Phone: (813) 710-9378
Fax: (813) 228-2841
beatriz.andre@eeoc.gov
lucas.michelen@eeoc.gov